SENTENCIA
A través del presente recurso se nos plantea si es man-datorio, como paso previo a conceder un aumento de sueldo a un alcalde, aprobar un reglamento que rija el proceso correspondiente. Igualmente, se cuestiona la aplicación a dicho proceso de unos criterios mínimos de evaluación plasmados en el Artículo 3.012 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico (Ley de Municipios Autónomos).(1) Acuden ante nos el Sr. Ber *466 nardo Negrón Montalvo (señor Negrón), exalcalde del mu-nicipio de Villalba, su señora esposa, la Sociedad Legal de Gananciales compuesta por ambos, el municipio de Vi-llalba (Municipio) y la Asamblea Municipal de Villalba (Asamblea Municipal) (en conjunto, los peticionarios). Es-tos sostienen que erró el Tribunal de Apelaciones (TA) al revocar la determinación del Tribunal de Primera Instan-cia (TPI), mediante la cual el foro primario desestimó la Demanda sobre sentencia declaratoria, pago indebido de fondos públicos y cobro de dinero, instada por el Estado Libre Asociado de Puerto Rico (Estado) en su contra para cuestionar el aumento de sueldo concedido al señor Negrón.
De otra parte, y si se determina que la Asamblea Municipal no cumplió con los requisitos establecidos en la ley al conceder los aumentos de sueldo, es menester resolver si procede restituir dichos fondos públicos. Del mismo modo, debemos auscultar si los tribunales inferiores tenían juris-dicción para atender el asunto planteado y si el Estado poseía legitimación activa para instar la presente acción.
I — I
El 13 de marzo de 1997, la Asamblea Municipal aprobó la Ordenanza Número 43, Serie 1996-97 (Ordenanza 43), y dispuso un aumento de ochocientos dólares ($800) mensua-les al sueldo del señor Negrón, entonces alcalde del Municipio. Posteriormente, el 9 de abril de 1997, se en-mendó la Sección 1 de dicha Ordenanza, por medio de la Ordenanza Núm. 46, Serie 1996-97 (Ordenanza 46), para incrementar la paga del alcalde nuevamente en doscientos dólares ($200) adicionales, para un total en aumentos de salario de mil dólares ($1,000) mensuales. Apéndice del Re-curso de Apelación-TA, págs. 249 y 254.
Transcurridos varios años, la Oficina del Contralor de Puerto Rico (Contralor) realizó una auditoría sobre las ope- *467 raciones fiscales del Municipio para el periodo compren-dido entre el 1 de julio de 1996 y el 30 de junio de 1999. Como producto de dicha auditoría, el 26 de febrero de 2001 se rindió el Informe de Auditoría M-01-28 (Informe). Apén-dice del Recurso de Apelación-TA, págs. 9-79. Entre los hallazgos, los auditores mencionaron que los aumentos de sueldo concedidos al señor Negrón allá para el 1997, por medio de las Ordenanzas 43 y 46, se habían aprobado sin considerar los estados financieros auditados del Municipio, sin indicar los criterios considerados para conceder dichos aumentos y sin aprobar un reglamento que guiara los pro-cesos relativos a la determinación del nuevo salario, todo esto en contravención con lo dispuesto en el Artículo 3.012 de la Ley de Municipios Autónomos, supra. Apéndice del Recurso de Apelación-TA, págs. 48. Basado en dichos ha-llazgos, recomendaron que se evaluara la legalidad de las ordenanzas pertinentes y que se requiriera el cumpli-miento con el esquema normativo pautado en la Ley de Municipios Autónomos. Apéndice del Recurso de Apela-ción-TA, págs. 21-26.
Luego de conocer y evaluar los resultados de la audito-ría realizada por el Contralor, el 20 de mayo de 2004 el Estado instó una Demanda sobre sentencia declaratoria, pago indebido de fondos públicos y cobro de dinero ante el TPI. Adujo que las actuaciones de la Asamblea Municipal cuando le concedió los aumentos de sueldo al señor Negrón —sin haber aprobado un reglamento para esos efectos y sin considerar los criterios establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos, supra— resultaban nulas, ilegales y contrarias a derecho. Basado en dicho planteamiento, sostuvo que mediante los aludidos aumen-tos, el señor Negrón había cobrado indebida e ilegalmente $53,230. Asimismo, solicitó al TPI que declarara nulas, ile-gales y contrarias a derecho las Ordenanzas 43 y 46 y, como resultado, resolviera que los aumentos otorgados y desembolsados mediante las referidas ordenanzas consti- *468 tuían pagos indebidos e ilegales de fondos públicos. Soli-citó, además, que como consecuencia de lo esbozado ante-riormente, condenara al señor Negrón, a su señora esposa y a la Sociedad Legal de Gananciales compuesta por am-bos, al rembolso de los $53,230, así como cualquier otra suma que hayan cobrado por los aumentos impugnados, además de los intereses legales aplicables y las costas, los gastos y los honorarios de abogado. Apéndice del Recurso de Apelación-TA, págs. 1-8.
Luego de varios trámites procesales, el TPI celebró el juicio en su fondo los días 9, 10 y 31 de mayo de 2007. Al mismo comparecieron todas las partes representadas por sus respectivos abogados y tuvieron amplia oportunidad de presentar evidencia testifical y documental. En el juicio quedó establecido que, efectivamente, al momento de apro-barse las ordenanzas que concedieron el aumento de sueldo al señor Negrón para el 1997, la Asamblea Municipal no contaba con un reglamento para regir dicho proceso. En cuanto al cumplimiento con los criterios establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos, supra, el Estado presentó prueba para demostrar que no se consideraron todos los criterios enumerados en dicho artí-culo, mientras los peticionarios sometieron evidencia para establecer justamente lo contrario.
El 9 de agosto de 2007, el TPI emitió Sentencia me-diante la cual dictaminó que el lenguaje del Artículo 3.012 de la Ley de Municipios Autónomos, supra, es claro y man-datorio al disponer que la Asamblea Municipal tiene que aprobar un reglamento para guiar el proceso de aumento de sueldo, antes de concederlo. Resolvió, no obstante, que por el mero hecho de no existir un reglamento no se inva-lidaban ipso facto las ordenanzas municipales, ni se con-vertían en ilegales o improcedentes los aumentos concedidos. Apoyó su decisión en la premisa de que el mismo artículo que requiere la aprobación del reglamento, establece a su vez unos criterios mínimos a considerar al *469 momento de determinar el salario que devengará el alcalde. Dado el hecho de que el tribunal entendió que la prueba desfilada en el juicio demostró que la Asamblea Municipal consideró todos los criterios preceptuados en el antedicho artículo previo a aprobar las Ordenanzas 43 y 46, el foro primario concluyó que las mismas eran válidas y legales,(2) por lo que no procedía la devolución del dinero que recibió el señor Negrón en concepto de aumento de sueldo. Como resultado de lo anterior, desestimó la De-manda incoada por el Estado. Apéndice, 3-9.
Inconforme con dicha determinación, el Estado recurrió ante el TA. Alegó, en síntesis, que erró el foro primario al desestimar su Demanda, a pesar de que tanto la prueba testifical como la documental demostró que la Asamblea Municipal no consideró todos y cada uno de los criterios específicamente establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos, supra, antes de aprobar el au-mento de sueldo al entonces alcalde.
El 13 de febrero de 2008, el Municipio presentó su opo-sición al recurso. Manifestó que del testimonio del Sr. José J. Flores Falcón (señor Flores), entonces Presidente de la Asamblea Municipal, se deducía que los miembros de la Asamblea Municipal habían considerado en caucus y en asamblea los criterios dispuestos en la Ley de Municipios Autónomos para concederle el aumento de sueldo al señor Negrón.(3) Adujeron en la alternativa que, de todos modos, la Ley de Municipios Autónomos no prohíbe aumentos de sueldo en el supuesto de que no se cumpla con todos los *470 criterios expresados en el Artículo 3.012 de dicho cuerpo legal. Expusieron, además, que dado que el propio artículo dispone cuáles son los criterios a considerar al conceder el aumento de sueldo, el no haber aprobado un reglamento con anticipación no provocó daños ni anuló lo actuado.
Argumentaron, además, que dado que mediante el pleito de autos se estaba cuestionando el desembolso de fondos que pertenecen al patrimonio municipal, le corres-pondía al Municipio y no al Estado instar la presente ac-ción, por lo que éste último carecía de legitimación activa. Por último, plantearon que de ser ciertas las alegaciones de la Demanda, el error cometido se consideraría como un error de derecho, por lo que según el estado de derecho vigente para ese entonces, el mismo no provocaría la resti-tución de los fondos.(4)
Luego de considerar los planteamientos de las partes, el TA revocó la determinación del foro primario. Resolvió que del Artículo 3.012 de la Ley de Municipios Autónomos, supra, claramente se deduce la exigencia de aprobar un re-glamento previo a establecer o aumentar el sueldo del alcalde. Especificó que el reglamento que para tales efectos se apruebe, debe incluir disposiciones necesarias para que los asambleístas municipales evalúen todos los criterios contenidos en la ley, así como cualquier otro factor que la legislatura municipal estime pertinente.
Concluyó que, en el presente caso, la omisión de redac-tar un reglamento y, por consiguiente, la ausencia de pro-cedimientos que guiaran la evaluación del aumento de sueldo del alcalde, convirtió la acción de la Asamblea Municipal en nula e ineficaz. Como consecuencia, anuló el au-mento de sueldo concedido al entonces alcalde de Villalba y ordenó el rembolsar a las arcas municipales los fondos pú-blicos desembolsados en exceso. Reconoció, además, la le-gitimación del Gobierno Central de intervenir con el uso y *471 disposición de los fondos municipales y la facultad que po-see para velar por su adecuada y correcta administración.
Es de esta determinación que los peticionarios acuden ante este Foro, aduciendo que el tribunal apelativo inter-medio cometió los errores siguientes:
PRIMER ERROR: Erró [e]l Honorable Tribunal de Apelacio-nes al no considerar el planteamiento, válido en derecho, de que no existía ni existe jurisdicción para atender el reclamo del Estado Libre Asociado de Puerto Rico.
SEGUNDO ERROR: Erró el Honorable Tribunal de Apelacio-nes al resolver que el Estado Libre Asociado de Puerto Rico tiene legitimación activa para incoar la acción civil.
TERCER ERROR: Erró el Honorable Tribunal de Apelaciones al resolver que la Asamblea Municipal de Villalba, en ausencia de un reglamento, estaba impedida de actuar sobre el sueldo del alcalde aún cuando la actuación se fundament [ó] en la opi-nión de la Oficina Central de Asuntos Municipales, brazo del [E]stado con inherencia exclusiva en los municipios y se toma-ron en cuenta los criterios dispuestos en ley para la aproba-ción de aumentos de sueldo al señor Alcalde.
CUARTO ERROR: Erró el Honorable Tribunal de Apelaciones al no concluir que siendo, en la alternativa, un error de dere-cho no procede restitución.
QUINTO ERROR: Erró el Honorable Tribunal de Apelaciones al no dar la debida deferencia a la determinación de credibili-dad concedida por el Tribunal de Primera Instancia a los tes-timonios vertidos. Petición de certiorari civil, pág. 6.
Examinada la petición de certiorari decidimos expedir el recurso solicitado y contando con la comparecencia de am-bas partes procedemos a resolver.
r — H f — I
A. Legitimación activa del Estado
La jurisdicción es la autoridad que posee un tribunal para considerar o decidir un caso o controversia. S.L.G. Solá-Moreno v. Bengoa Becerra, 182 D.P.R. 675 (2011). Además de auscultar los aspectos de jurisdicción sobre la persona y sobre la materia, los tribunales tenemos la deli- *472 cada tarea de examinar, entre otros factores, la legitima-ción que posee la parte que comparece ante nos como me-canismo para delimitar dicha jurisdicción. Considerando que en los dos primeros señalamientos de error se está cuestionando, tanto la jurisdicción sobre la cuestión plan-teada como la legitimación activa de la parte que instó la acción, decidimos resolver en primera instancia y en con-junto los señalamientos presentados en el primer y se-gundo error. (5)
Según hemos expresado en ocasiones anteriores, el cargo de Contralor fue creado constitucionalmente para fiscalizar todos los ingresos, las cuentas y los desembolsos del Estado, de sus agencias e instrumentalidades y de los municipios para determinar si los mismos se han hecho en conformidad con la ley. Art. III, Sec. 22, Const. E.L.A., L.P.R.A., Tomo 1; Asoc. Alcaldes v. Contralor, 176 D.P.R. 150, 159-160 (2009). Con el propósito de implantar dicho mandato constitucional, la Ley Núm. 9 de 24 de julio de 1952 (2 L.P.R.A. sec. 71 et seq.), según enmendada, creó la Oficina del Contralor de Puerto Rico, mediante la cual se le confirieron al Contralor los mecanismos para poder llevar a cabo dichas investigaciones sobre las cuentas y los des-embolsos de todos los fondos públicos. E.L.A. v. Asoc. Empleados Obras Púb. Mun., 126 D.P.R. 320, 327 (1990). Dichas intervenciones del Contralor se realizan una vez los fondos públicos han sido desembolsados, de modo que se pueda evaluar la legalidad y prudencia en su administra-ción y utilización. Asoc. Alcaldes v. Contralor, supra, pág. 160; RDT Const. Corp. v. Contralor I, 141 D.P.R. 424, 431 (1996).
No obstante, ni la Constitución ni la legislación autori-zan al Contralor a tramitar las acciones que surjan de sus investigaciones, razón por la cual la Asamblea Legislativa *473 promulgó la Ley Núm. 17 de 8 de mayo de 1973, según enmendada (Ley 17)(6) (3 L.P.R.A. ant. see. 136), predece-sora de los Artículos 48-50 de la vigente Ley Núm. 205-2004 (3 L.P.R.A. secs. 294-294b), conocida como Ley Orgá-nica del Departamento de Justicia,(7) para conferirle al Departamento de Justicia la facultad de encauzar las ac-ciones civiles y criminales que surjan como resultado de las intervenciones del Contralor en relación con los ingresos, las cuentas y los desembolsos gubernamentales, inclu-yendo los de los municipios. Asoc. Alcaldes v. Contralor, supra, pág. 161; E.L.A. v. Asoc. Empleados Obras Púb. Mun., supra, págs. 327-328. Al Secretario de Justicia se le confiere dicha encomienda con el propósito de que éste ayude en la delicada tarea de salvaguardar la honestidad administrativa y preservar la legalidad en el manejo de los *474 fondos públicos. H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 963 (1993).
Mediante el anterior esquema, los auditores y emplea-dos de la Oficina del Contralor intervienen, supervisan y detectan si se ha cometido alguna irregularidad en el uso de los fondos públicos y refieren, posteriormente, sus ha-llazgos al Secretario de Justicia para que sea éste quien tome las acciones legales pertinentes. Sin embargo, aun cuando el Contralor tiene la facultad de presentar dichos informes a las agencias del Gobierno y solicitar que éstas, a su vez, evalúen si procede instar alguna acción civil y/o criminal, es en dichas agencias e instrumentalidades en quienes, en última instancia, recae el deber de decidir si, según los hechos y hallazgos, corresponde iniciar procedi-mientos judiciales. Asoc. Alcaldes v. Contralor, supra, págs. 161-162.
Complementando la función fiscalizadora del Contralor de velar por la adecuada y legítima utilización de los fon-dos públicos, el Artículo VI de nuestra Constitución dis-pone en su Sección 9 que “ [s] ólo se dispondrá de las propie-dades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley”. Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 429. Dicho mandato cons-titucional obliga a todo organismo gubernamental, tanto a nivel estatal como municipal, a velar y asegurar el desem-bolso legítimo de todos los fondos públicos.
En E.L.A. v. Soto Santiago, 131 D.P.R. 304 (1992), le reconocimos legitimación al Estado para iniciar una ac-ción, conforme a la Ley 17, para recobrar unos fondos pú-blicos ilegalmente sustraídos por un empleado municipal. Se fundamentó dicha facultad en el mandato constitucio-nal contenido en el Art. VI, Sección 9 de nuestra Constitu-ción, supra.
Posteriormente, en E.L.A. v. Cole, 164 D.P.R. 608 (2005), el Estado presentó una Demanda en cobro de fon- *475 dos públicos contra el Comité Local Municipal (Comité) del Partido Popular Democrático (PPD) en Mayagüez y contra el entonces alcalde de dicho municipio, el Sr. Benjamín Cole Vázquez (Cole Vázquez),(8) al conocer los resultados de una investigación que realizó la Oficina del Contralor relacionada con las operaciones fiscales del mencionado municipio. En la Demanda se reclamó el rembolso al erario de unos fondos municipales ilegalmente pagados a un em-pleado municipal que realizó labores en el Comité mien-tras cobraba su sueldo de los fondos del municipio.
Luego de determinar que el PPD se había enriquecido injustamente de los fondos desembolsados por el municipio para el pago del empleado y que, por lo tanto, tenía que restituirlos, reiteramos la capacidad del Estado para enta-blar demandas como la del presente caso, a base de los resultados de investigaciones realizadas por la Oficina del Contralor. Recalcamos que el Estado tiene una obligación constitucional de velar por la más sana y recta administra-ción de los fondos públicos, tanto estatales como municipa-les, para así salvaguardar los intereses de todos los ciuda-danos de Puerto Rico. E.L.A. v. Cole, supra, pág. 644.
Reproducimos, además, en dicho caso, nuestras expre-siones anteriores relativas a que “el manejo prudente de fondos públicos está saturado de intereses de orden pú-blico, sin que importe la cuantía involucrada”. E.L.A. v. Cole, supra, pág. 643. Fundamentado en dicha premisa, reconocimos que el Estado tiene la potestad de incoar ac-ciones para reclamar fondos públicos, tanto estatales como municipales, que se hayan desembolsado ilegalmente y lo-grar que estos reviertan a su fuente de origen, ya sea a las arcas del Gobierno central o de los gobiernos municipales, íd. pág. 644.
Un examen detenido de los hechos del presente caso, de *476 la ley aplicable y de la jurisprudencia interpretativa nos convence de que el Estado cuenta con legitimación activa para instar la acción de autos, solicitando que se declaren ilegales los desembolsos de los fondos públicos municipales que recibió el señor Negrón en concepto de aumentos de sueldo y se ordene su restitución.
Considerando que constituye una clara política pública la de promover y velar por la más sana y recta administra-ción de los fondos públicos, tanto estatales como municipa-les, no encontramos impedimento para que el Estado, en cumplimiento con su deber constitucional, inste las accio-nes pertinentes para proteger dichos fondos, tal y como lo hizo en la presente situación de hechos. Después de todo, no hace diferencia a la hora de reclamar ilegalidad en el dispendio si los fondos son estatales o municipales, pues en ambos casos se trata de fondos públicos.
En lo aquí pertinente, los desembolsos de los fondos en concepto de aumentos de sueldo concedidos al señor Ne-grón estuvieron apoyados en una ordenanza municipal in-eficaz, según explicamos más adelante. Tratándose de un desembolso ilegal de fondos públicos, le reconocemos plena capacidad al Estado para instar la acción en el caso de autos.
Como bien mencionáramos en E.L.A. v. Cole, supra, pág. 645 esc. 24:
Resolver de otra manera implicaría que en todo caso en que un alcalde participe en un esquema indebido, en que ocurre una erogación ilegal de fondos públicos municipales, y éste se niega a instar la acción correspondiente, dichos fondos no po-drían ser recobrados. Es por ello que el E.L.A., necesaria-mente, tiene capacidad (standing) para instar en el presente caso la acción de recobro de fondos públicos ilegalmente des-embolsados, contra la parte que ilegalmente se benefició de dicho desembolso, en representación de los ciudadanos de dicha municipalidad; ello en cumplimiento del mandato consti-tucional contenido en la See. 9 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, ante. (Énfasis en el original.)
*477 Basado en lo anterior, concluimos que no erró el TA al reconocerle legitimación al Estado para incoar la presente acción civil, pues, después de todo, arm cuando se trataba de fondos municipales, los mismos son fondos públicos, por lo que el Estado viene igualmente obligado a velar por su sana y recta administración.(9)
B. Artículo 3.012 de la Ley de Municipios Autónomos; re-quisitos en ley para conceder aumento de sueldo a un al-calde
La Ley Núm. 36-1995 (Ley 36) enmendó la Ley de Mu-nicipios Autónomos para añadir, entre otros asuntos, los requisitos procesales para conceder aumentos de sueldo a los alcaldes. Dicha normativa está recogida en el Artículo 3.012 de la Ley de Municipios Autónomos y dispone lo si-guiente en su parte pertinente:
La Legislatura Municipal aprobará, con el voto de dos ter-ceras partes de los miembros del cuerpo, el reglamento que regirá los procedimientos de evaluación, determinación y ad-judicación, del sueldo del alcalde.
Al considerar aumentos de salarios para el alcalde, la Legis- *478 latura tomará en consideración, entre otros, que dicho cuerpo encuentre necesarios, los siguientes criterios:
(1) El presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o single audit.
(2) La población y el aumento en los servicios a la comunidad.
(3) El cumplimiento con los controles fiscales y administra-tivos establecidos por O.C.A.M., la Oficina del Contralor y el gobierno federal.
(4) La complejidad de las funciones y responsabilidades del Primer Ejecutivo.
(5) El costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la Legislatura Municipal.
(6) La habilidad de atraer capital y desarrollo econó-mico al respectivo municipio.
(7) Tomar en cuenta los sueldos devengados por los miembros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional. (Énfasis suplido y en el original.)
Al examinar el historial legislativo de la Ley Núm. 36, específicamente en lo relativo al Artículo 3.012, notamos que el propósito de la Asamblea Legislativa al promulgar dicho precepto fue establecer unas guías generales que se-rían evaluadas por las legislaturas municipales al conside-rar aumentos de sueldo para los alcaldes. E.L.A. v. Crespo Torres, 180 D.P.R. 776, 789 (2011). Considerando esa pos-tura, hemos resuelto que al considerar aumentos en la paga de los alcaldes, las legislaturas municipales deben cumplir con los criterios guías que establece la Ley de Mu-nicipios Autónomos en el mencionado Artículo. Aclaramos, sin embargo, que dichos criterios constituyen un listado mínimo y no taxativo, por lo que los legisladores pueden considerar cualquier otro factor que estimen pertinente. La determinación de si se cumplió o no con los parámetros necesarios para otorgar un aumento de salario estará ba-sada en un análisis de razonabilidad. Id., pág. 790.
De otra parte, la Ley de Municipios Autónomos también es clara al requerir la adopción de un reglamento para re-gir los procesos de evaluación, determinación y adjudica- *479 ción del sueldo del alcalde. De ese modo, recientemente en E.L.A. v. Crespo Torres, supra, pág. 798, establecimos que cualquier incremento en el salario de un alcalde tiene que estar precedido por la aprobación de un reglamento, según lo requiere la ley.
Por ende, surge tanto de la letra clara de la ley, así como de lo resuelto mediante opinión en E.L.A. v. Crespo Torres, supra, que cuando la Legislatura Municipal aprueba au-mentos de sueldo a los alcaldes, se obliga a aprobar un reglamento que guíe dicho proceso, así como a considerar los criterios establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos, supra. Cabe recordar que conforme al Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14, cuando la letra de la ley es clara y libre de toda ambigüedad, la misma no debe ser menospreciada bajo el pretexto de cumplir su espíritu.
Los peticionarios sostienen que no era indispensable contar con un reglamento y evaluar todos y cada uno de los criterios preceptuados en el Artículo 3.012 de la Ley de Municipios Autónomos, supra, al momento de aprobar los aludidos aumentos de sueldo. Fundamentan su alegación en las interpretaciones que la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.) emitió en unas opiniones a tales efectos. Sin embargo, no les asiste la razón. Nos explicamos.
Luego de aprobarse la enmienda que instituyó en la Ley de Municipios Autónomos el procedimiento a seguir para considerar los aumentos de sueldo a los alcaldes, la O.C.A.M. se expresó para ofrecer su interpretación de esa disposición. En síntesis, concluyó que la aprobación de un reglamento no era una condición sine qua non para conce-der un aumento de sueldo. Determinó, además, que los cri-terios enumerados allí no eran exhaustivos, por lo que in-cumplir con alguno de ellos al realizar la evaluación no era fatal, ni mucho menos debía ser causa de nulidad auto-mática. E.L.A v. Crespo Torres, supra, págs. 782-784.
*480 Ante la discrepancia entre las interpretaciones que emi-tió la O.C.A.M. y las que ofrecieron el Secretario de Justi-cia y la Oficina del Contralor de Puerto Rico, la O.C.A.M. emitió una Circular Informativa el 18 de julio de 2002 en la que rexaminó sus opiniones anteriores. Así, pues, indicó que el lenguaje inequívoco de la Ley de Municipios Autó-nomos era para que al conceder aumentos de sueldo a los alcaldes, se consideraran todos los criterios establecidos en la Ley, además de aprobar un reglamento previo a la determinación.
Aun cuando se ha reconocido la facultad que tiene la O.C.A.M. de asesorar y aprobar reglamentación en las ma-terias relacionadas con la organización, la administración, el funcionamiento y la operación de los municipios, así como evaluar las leyes aplicables a los municipios y some-ter a la legislatura sus recomendaciones, las opiniones que dicha oficina exprese para cumplir con esas funciones tie-nen solamente carácter persuasivo. Art. 41 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4901; E.L.A. v. Crespo Torres, supra, págs. 791-792. Por lo tanto, no es factible impartir validez a las actuaciones ilegales de los municipios por el simple hecho de que las mismas estuvie-ron sustentadas en interpretaciones que de la ley realizó la O.C.A.M. íd., pág. 792.
A tono con lo anterior y por analogía, anteriormente he-mos señalado que las Opiniones del Secretario de Justicia solo tienen carácter persuasivo, por lo que no pueden obli-gar a los tribunales. San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640, 671 (2008). En E.L.A. v. Crespo Torres, supra, pág. 792, citando nuestras expresiones en San Gerónimo Caribe Project v. A.R.Pe., supra, enuncia-mos que
[e]n cuanto al efecto de las Opiniones del Secretario de Justi-cia a nivel interno de las agencias del Ejecutivo, se han elabo-rado teorías que le adscriben un carácter consultivo, no man-datorio, por lo que —teóricamente— el recipiente de ella no está obligado a seguir sus lineamientos. Sin embargo, por tra- *481 tarse de opiniones oficiales del funcionario ejecutivo de mayor jerarquía encargado de la administración de la justicia, en realidad son de un gran valor persuasivo. (Cita omitida.)(10)
La O.C.A.M., en su circular de 18 de julio de 2002, ex-presó que las directrices pautadas en la misma tendrían carácter prospectivo, por lo que los aumentos de sueldo concedidos de acuerdo con sus opiniones anteriores no se afectarían ni serían invalidados. Sin embargo, según men-cionáramos anteriormente, a las opiniones de la O.C.A.M. solo se les podrá adjudicar un carácter meramente persua-sivo y, por el orden jerárquico de las fuentes de Derecho, las mismas nunca podrán ir por encima de la letra clara de la ley. Es por dicha razón que aun cuando en E.L.A. v. Crespo Torres, supra, págs. 792-793, reconocimos que la asesoría de la O.C.A.M. es crucial en los asuntos fiscales de los municipios, aclaramos que sus opiniones nunca podrán tener carácter vinculante.
En el caso de autos, cuando se aprobaron las ordenan-zas para aumentar el sueldo del señor Negrón no existía ningún reglamento para guiar ese proceso. De hecho, fue en abril del 2000, tres años después de haberse concedido el aumento de sueldo, cuando finalmente la legislatura municipal aprobó un reglamento para establecer los proce-dimientos de evaluación y la determinación del sueldo del alcalde. Es necesario mencionar que para cuando se apro-baron las aludidas ordenanzas, ya se habían incorporado a la Ley de Municipios Autónomos los requisitos establecidos en el Artículo 3.012 de dicho cuerpo legal.
En cuanto a los criterios enumerados en la disposición estatutaria, aun cuando hemos expresado que no constitu-yen una lista taxativa y que la determinación de si se cum-plió o no con ellos va a descansar sobre una base de razo-nabilidad, no existen expresiones en las ordenanzas ni en las actas de los procesos llevados a cabo al aprobarlas que *482 nos convenzan de que el análisis llevado a cabo fue razonable.
Fundamentado en unos hechos muy similares, en E.L.A. v. Crespo Torres, supra, pág. 798, resolvimos y citamos que
... todo aumento de sueldo a un alcalde debe estar precedido por la aprobación del reglamento que dispone el Art. 3.012 de la Ley de Municipios Autónomos, supra, y que al conceder el aumento, la legislatura municipal debe tomar en considera-ción como guías, los siete criterios esgrimidos en la ley.
La obligación de cumplir con esos requisitos surge, ade-más, de los motivos por los cuales en 1995 se decidió en-mendar la Ley de Municipios Autónomos para añadirle el Artículo 3.012. Se procuró terminar con los procesos infor-males carentes de la transparencia que se supone caracte-rice todos los asuntos relacionados con el desembolso de fondos públicos. Del mismo modo, solo con un examen so-mero de la ley, nos percatamos de que su lenguaje claro responde a que es necesario aprobar el reglamento y con-siderar los requisitos que se esgrimen en ella. Sobre el particular, dispone la ley en términos imperativos que la Le-gislatura Municipal aprobará un reglamento que regirá los procedimientos de evaluación, determinación y adjudica-ción del sueldo del alcalde y que al considerar los aumentos considerará los criterios enumerados en la disposición legal.
Dentro del marco del Derecho antes enunciado, enten-demos que los legisladores municipales de Villalba actua-ron al margen de la ley al aprobar los aumentos de sueldo sin cumplir con los requisitos establecidos en la Ley de Municipios Autónomos. Al decidir esto, rechazamos como defensa el haber actuado confiando en la posición original de la O.C.A.M., puesto que las interpretaciones de una agencia del Gobierno no pueden ir por encima del texto claro de la ley. Por lo tanto, no erró el TA al resolver que la Asamblea Municipal no podía intervenir con el sueldo del alcalde en ausencia de un reglamento que guiara el pro- *483 ceso y sin que mediase la evaluación de factores necesarios para sustentar dicha determinación.
C. Doctrina de cobro de lo indebido
Uno de los remedios solicitados por el Estado en su De-manda es la restitución del dinero pagado en concepto de aumento de salario al señor Negrón, de acuerdo con las Ordenanzas 43 y 46. En la tarea de determinar si procede devolver esos fondos públicos es fundamental considerar que los pagos que se le hicieron al ex alcalde se realizaron según la creencia de que éste tenía el derecho a recibirlos, conforme la interpretación del Artículo 3.012 de la Ley de Municipios Autónomos, supra, que ofreció la O.C.A.M.
El Código Civil de Puerto Rico dispone en su Artículo 1795 (31 L.P.R.A. sec. 5121) que, cuando se recibe una cosa que no se tenía derecho a cobrar y que por error ha sido indebidamente entregada, surge la obligación de aquel que la recibió de restituirla. Dicha disposición legal recoge lo que los juristas han denominado como la “doctrina de cobro de lo indebido”. En Sepúlveda v. Depto. de Salud, 145 D.P.R. 560 (1998), y reafirmado recientemente en E.L.A. v. Crespo Torres, supra, págs. 793-794, establecimos que para que se configure la doctrina de cobro de lo indebido se tienen que cumplir los siguientes tres requisitos: (1) que se produzca un pago con la intención de extinguir una obliga-ción, (2) que no haya justa causa para el pago, es decir, que no exista una obligación jurídica entre el que paga y el que cobra, o que, si existe, sea por una cantidad menor a la pagada, y (3) que el pago se haya hecho por error y no por mera liberalidad o por otro concepto.
Con fundamento en esa doctrina, hemos distinguido en-tre lo que constituye un error de hecho y un error de derecho. Así, anteriormente hemos expresado que el error de hecho es aquel que se comete cuando alguien obra a base de unos hechos que no son los verdaderos o cuando ocurre un error formal o de trámite. En cambio, el error de derecho tiene lugar cuando el que realiza el pago lo hace *484 amparado en la creencia de que éste le es exigible en De-recho, bien porque desconoce la norma que lo descarga del pago o por interpretación errónea del derecho aplicable. E.L.A. v. Crespo Torres, supra, pág. 794; Sepúlveda v. Depto. de Salud, supra, pág. 568.
Amparados en la jurisprudencia del Tribunal Supremo de España y en la interpretación que varios tratadistas españoles le han dado al Artículo 1895 del Código Civil Español, homólogo del Artículo 1795 de nuestro Código Civil, supra, adoptamos la norma de que solo el error de he-cho y no el de derecho da lugar a la obligación de restituir. E.L.A. v. Crespo Torres, supra, pág. 794; Sepúlveda v. Depto. de Salud, supra, págs. 567-568; Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1, 48 (1991). Añadimos que se exime a la persona que recibió el pago indebido por un error de derecho de devolver lo pagado, aun cuando dicho pago se trate de fondos públicos. Aulet v. Depto. Servicios Sociales, supra, pág. 48; A.C.A.A. v. Bird Piñero, 115 D.P.R. 463, 467 (1984).
No obstante, la distinción antes esbozada acerca del error de hecho y el de derecho fue abandonada en la juris-prudencia española a partir de la Sentencia de 7 de julio de 1950. De ese modo, en España se acogió la nueva postura que dispone que el derecho de repetición procede, tanto si el error cometido es de hecho como de derecho. En E.L.A. v. Crespo Torres, supra, págs. 795-797, citando a tratadistas españoles y expresiones del Prof. Michel Godreau,(11) des-cartamos el anterior precedente judicial en nuestra juris-dicción y acogimos la corriente moderna abandonando, para efectos de la restitución, la distinción entre el error de hecho y el error de derecho. Aclaramos, sin embargo, que esa norma aplicaría a casos futuros sobre la materia en cuestión, descartando así la posibilidad de extenderla re-troactivamente a unas partes que confiaron en el estado de *485 derecho vigente al aprobar y desembolsar aumentos de sueldo.
En la presente situación de hechos, la Asamblea Municipal aprobó unas ordenanzas para concederle un aumento de sueldo al señor Negrón, entonces alcalde del Municipio, amparados en la interpretación que la O.C.A.M. realizó del Artículo 3.012 de la Ley de Municipios Autónomos, supra. No obstante, en el proceso no cumplieron con la aprobación de un reglamento ni con la evaluación de unos requisitos mínimos enumerados en la aludida disposición legal.
A base de lo anterior, hemos resuelto que habiéndose efectuado dichos pagos, creyendo que procedían en derecho y no como mera liberalidad, con la intención de cumplir con una obligación que se reputaba válida y sin haber justa causa, ya que no se aprobó en cumplimiento con la ley, indudablemente los mismos se trataron de un cobro de lo indebido.
El estado de derecho vigente en cuanto a la doctrina de cobro de lo indebido, para cuando se aprobó y se pagó el dinero relativo al aumento de sueldo del señor Negrón, mantenía la distinción entre el error de hecho y el error de derecho en cuanto a cuándo procedía la restitución. Alu-diendo a dicha normativa, cuando el error cometido era de hecho existía una obligación de restituir lo recibido, mien-tras que si se trataba de un error de derecho se eximía a la persona de devolver lo pagado indebidamente.
En el caso de autos, los procesos concernientes al au-mento de sueldo se realizaron considerando las interpreta-ciones que realizó la O.C.A.M. del articulado pertinente en la Ley de Municipios Autónomos. Sin embargo, esa inter-pretación que realizó la O.C.A.M. no estaba acorde con la letra clara del Artículo 3.012 de la Ley de Municipios Au-tónomos, supra, por lo que era manifiestamente errónea. Al conceder los aumentos, confiando en la interpretación errónea del derecho aplicable que hizo la O.C.A.M., el pago del señor Negrón es considerado como un error de derecho. *486 Se acoge como tal, ya que la Legislatura Municipal, al con-fiar en la interpretación de la O.C.A.M., actuó sin ajus-tarse a la norma jurídica vigente.
Luego de determinar que los aumentos y los pagos con-cernientes se tratan de un error de derecho, según la nor-mativa vigente cuando se concedieron y el Estado instó la presente acción, no procede que el señor Negrón tenga que restituirlos. Al decidir, hemos considerado que aun cuando en E.L.A v. Crespo Torres, supra, resolvimos que procede la restitución, tanto cuando el error cometido es de hecho como cuando es de derecho, claramente indicamos que esa norma de derecho aplicaría a casos futuros y no a aquellos en los cuales las partes confiaron en el estado de derecho vigente que distinguía, para efectos de la restitución, entre el error de hecho y el de derecho.
Por lo tanto, erró el TA al ordenar el rembolso a las arcas municipales de los fondos municipales desembolsa-dos en concepto de aumentos de sueldo por constituir el pago de los mismos un error de derecho.
D. Deferencia a las determinaciones del TPI sobre testimo-nios vertidos
Por último, los peticionarios aducen que erró el foro ape-lativo intermedio al no otorgar la debida deferencia a la determinación de credibilidad concedida por el TPI a los testimonios presentados en el juicio.
Es norma bien asentada que los tribunales apelativos se deben abstener de intervenir con las determinaciones de hecho y la adjudicación de credibilidad realizada por los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. Pueblo v. García Colón I, 182 D.P.R. 194 (2011); González Hernández v. González Hernández, 181 D.P.R. 746 (2011). Se respeta al foro primario en su función de aquilatar la credibilidad, en consideración a que, de ordi-nario, solo tenemos récords mudos e inexpresivos. Muñiz *487 Noriega v. Muñoz Bonet, 177 D.P.R. 967, 987 (2010); Trinidad v. Chade, 153 D.P.R. 280, 291 (2001).
Igualmente, dispone la Regla 43.2 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. Ill),(12) en lo pertinente al caso ante nos, que
[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testi-gos....
Sin embargo, en Méndez v. Morales, 142 D.P.R. 26, 36 (1996), expresamos que aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, no es absoluto. Por lo tanto, cuando los tribunales de instancia realicen una apreciación errónea de la prueba no se le concederá inmunidad a su determinación, por lo que ésta puede estar sujeta a la facultad revisora de los tribunales apelativos. Id.; Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 712 (1990); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987). De ese modo, hemos resuelto reiteradamente que los tribunales apelativos podremos intervenir con las conclusiones de los jueces de instancia cuando la aprecia-ción de la prueba no represente el balance más racional, justiciero y jurídico de toda la evidencia recibida. Méndez v. Morales, supra, pág. 36.
En la presente situación de hechos, el TA, luego de exa-minar las transcripciones de los tres (3) días de vistas, ade-más de toda la prueba documental que obraba en los autos del caso, concluyó que era inaceptable el planteamiento de la Asamblea Municipal — acogido por el TPI en su deci-sión — en cuanto a que los legisladores municipales habían discutido informalmente los criterios incluidos en la ley. *488 Los peticionarios alegan que esa determinación es errada y que el TA debió otorgar deferencia a la determinación de credibilidad que el TPI concedió a los testimonios presentados.
Después de haber tenido la oportunidad de revisar el expediente, determinamos que la determinación del TA so-bre este particular es correcta. Lo anterior, de acuerdo con la premisa de que a pesar de que del testimonio del señor Flores se deducen expresiones generales en cuanto a que los Asambleístas Municipales consideraron los criterios re-queridos, no surge ni de las ordenanzas correspondientes ni de las actas de los procesos llevados a cabo para aprobarlas. De los expedientes municipales no se infiere que se hayan considerado otros elementos más allá de la preparación académica del señor Negrón y de lo que éste con su liderato, según se alega, logró para el Municipio.
Para el momento en que se aprobaron las ordenanzas, el Artículo 5.013 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4213,(13) disponía que en las actas de los pro-cedimientos legislativos se debía consignar, entre otros, los asuntos discutidos, las manifestaciones hechas por cada uno de los miembros con relación a los asuntos considera-dos y los acuerdos sobre los proyectos de resoluciones y ordenanzas. Sin embargo, como mencionáramos, no consta ni en las ordenanzas ni en las actas de los procedimientos que las gestiones que culminaron en la aprobación de los aumentos de sueldo al señor Negrón se hayan realizado con la formalidad requerida por el Artículo 3.012 de la Ley de Municipios Autónomos, supra, al no mediar la conside-ración de los criterios utilizados para aprobar el aumento de salario del primer mandatario municipal con la debida designación de los requisitos establecidos en la ley. Como no tenemos otra prueba al respecto, coincidimos con la apreciación del TA de que no había fundamento en el expe- *489 diente para entender que la Asamblea Municipal hubiese cumplido con lo establecido en la ley.
No podemos perder de perspectiva que el proceso de de-terminar el sueldo de los alcaldes debe ser de suma recti-tud, en el cual deben imperar consideraciones de la más alta jerarquía, pues, después de todo, de lo que se trata es de la disposición y administración de los fondos públicos. Al así hacerlo, debemos considerar la apremiante situación económica por la que está atravesando la Isla y asegurar-nos de que nuestro norte sea siempre fomentar el mayor cuidado, el celo y la prudencia en el uso y en la disposición de los fondos públicos. La normativa legal concerniente a este caso va dirigida, precisamente, a velar por el uso sen-sato de los fondos públicos, por lo que la misma le impone un deber a los legisladores municipales de mesura y escru-pulosidad al poner en práctica sus preceptos.
Lo anterior nos lleva a concluir que no erró el TA al rechazar el testimonio del señor Flores, según ofrecido en el juicio.
III
Por los fundamentos antes expuestos, confirmamos la determinación del TA al reconocerle legitimación activa al Estado para incoar la acción del caso de autos, así como al aceptar tener jurisdicción para intervenir en la controver-sia planteada. Asimismo, entendemos que dicho foro resol-vió conforme a derecho en tanto y en cuanto concluyó que era mandatorio aprobar un reglamento y cumplir con los criterios establecidos en el Artículo 3.012 de la Ley de Mu-nicipios Autónomos, supra, antes de concederle el aumento de sueldo al señor Negrón. Sin embargo, revocamos la de-terminación recurrida en cuanto ordenó la restitución de los fondos públicos, ya que al constituir la aprobación del aumento de sueldo y su desembolso un error de derecho, por la normativa jurídica vigente para ese entonces, no procede *490 que el señor Negrón devuelva lo que se le pagó en aumentos de salario. Así modificada, se confirma la sentencia recurrida.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Den-ton emitió una opinión disidente, a la que se unió la Juez Asociada Señora Rodríguez Rodríguez. La Jueza Asociada Señora Fiol Matta disiente sin opinión escrita.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 Ley Núm. 81-1991 (21 L.P.R.A. see. 4112), según enmendada por la Ley Núm. 36-1995.

 En su Sentencia, el Tribunal de Primera Instancia (TPI) expresó que entre los criterios considerados por la Asamblea Municipal para conceder el aumento de sueldo se encontraban: “[e]l informe del presupuesto y último ‘single audit’ disponi-ble de[l M]unieipio; la preparación del alcalde y la complejidad de sus deberes, res-ponsabilidades y funciones; las inversiones y empleos que se podían traer al Muni-cipio, los servicios provistos a la comunidad y el desarrollo económico que había experimentado en aquel entonces el municipio; así como todos los factores y criterios que disponía el Art. 3.012 de la Ley de Municipios Autónomos, para evaluar y esta-blecer el sueldo a devengar por el alcalde”. Alegato de la parte recurrida, pág. 8.

 Según se deduce de la transcripción de la vista celebrada el 10 de mayo de 2007.

 Los demás peticionarios adoptaron por referencia básicamente los mismos planteamientos de derecho que esgrimió el municipio de Villalba (Municipio).

 A pesar de que los peticionarios señalaron como primer error el asunto de la falta de jurisdicción y como segundo error lo atinente a la legitimación activa del Estado, hemos decidido invertir el orden y atender primeramente lo relativo a la legitimación activa.

 La Ley Núm. 17 de 8 de mayo de 1973 disponía lo siguiente en su parte pertinente:
“(a) Se crea la Oficina de Asuntos del Contralor adscrita al Departamento de Justicia. Dicha Oficina funcionará bajo la supervisión general del Secretario de Jus-ticia, pero su dirección inmediata estará a cargo de un Director nombrado por el Secretario de Justicia.
“(b) Las funciones de la Oficina de Asuntos del Contralor serán las de instar ante los tribunales de justicia toda acción civil o criminal que surja como resultado de cualquier intervención del Contralor en relación con los ingresos, cuentas y des-embolsos del Estado, sus agencias, instrumentalidades y municipios, de acuerdo con la Constitución, y representar al Estado Libre Asociado, a nombre del Secretario de Justicia en tales acciones. Además, la Oficina brindará al Contralor toda la colabo-ración que sea necesaria, durante los procesos investigativos que él lleve a cabo sin necesidad de esperar la rendición de informes finales de dichas investigaciones.” Véase 1973 Leyes de Puerto Rico 58.

 El Artículo 48 de la Ley Orgánica del Departamento de Justicia dispone como sigue en su parte pertinente:
“Artículo 48. - Creación. Director
“Se crea la Oficina de Asuntos del Contralor en el Departamento, la cual fun-cionará bajo la supervisión general del Secretario y la dirección inmediata de un Director designado por el Secretario.” 2004 Leyes de Puerto Rico 1364.
Asimismo, el Artículo 49 dispone lo siguiente:
“Artículo 49. - Funciones
“La Oficina de Asuntos del Contralor tendrá las siguientes funciones:
“(d) Realizar cualquier otra gestión o instar aquellas acciones que el Secretario determine relacionadas con los resultados de las intervenciones del Contralor de Puerto Rico respecto a los ingresos, cuentas, desembolsos y bienes del Estado Libre Asociado, sus agencias, instrumentalidades, corporaciones públicas y municipios, de acuerdo con las leyes y la Constitución del Estado Libre Asociado.” íd., pág. 1365.

 Posteriormente, se enmendó la Demanda para incluir como demandados al Partido Popular Democrático y al municipio de Mayagüez, y desistir de la Demanda en contra de Cole Vázquez en su carácter personal.

 Cabe señalar que los peticionarios alegaron que de acuerdo con el término de veinte (20) días que concede el Artículo 15.002 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico (Ley de Municipios Autónomos), 21 L.P.R.A. see. 4702, para cuestionar las gestiones municipales, no existía ni existe jurisdicción sobre la materia para atender los reclamos del Estado. No obstante, es menester recordar que el Artículo 4 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4, dispone que los actos ejecutados contra lo dispuesto en la ley son nulos. La nulidad de dichos actos los convierte en inexistentes. Por lo tanto, no pueden ser objeto de confirmación ni de prescripción sanatoria alguna, pudiéndose instar acción de im-pugnación contra éstos en cualquier momento. Véanse, por ejemplo: Ríos v. Municipio Isabela, 159 D.P.R. 839, 849 (2003); Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 239 (2001); Montañez v. Policía de Puerto Rico, 150 D.P.R. 917, 921 (2000); Atanacia Corp. v. J.M. Saldaña, Inc., 133 D.P.R. 284, 301 (1993); V.O. Ind. Corp. v. Komodidad Dist., Inc., 131 D.P.R. 261, 273 (1992); Millán v. Caribe Motors Corp., 83 D.P.R. 494, 504 (1961); Sucn. Ramírez v. Tribl. Superior, 81 D.P.R. 357, 363 (1959).
Al aprobarse las Ordenanzas 43 y 46 sin cumplirse con los trámites dispuestos en la Ley de Municipios Autónomos, las mismas se consideran nulas por ser contra-rias a Derecho. Dado que la prescripción no corre contra lo inexistente, el Estado pudo haber solicitado la nulidad de las ordenanzas en cualquier momento. Conclui-mos, por lo tanto, que no erró el TA al reconocer que tenía jurisdicción para atender el reclamo del Estado, al tratarse el presente caso de la impugnación de un acto nulo, para lo cual nuestro ordenamiento jurídico no dispone de un término de prescripción.

 C.I. Gorrín Peralta, Fuentes y proceso de investigación jurídica, Orford, Equity Pub. Co., 1991, pág. 258.

 M.J. Godreau, Derecho Civil Patrimonial, 69 Rev. Jur. U.P.R. 519, 540-541 (1999).

 Ya que los eventos relevantes al presente recurso sucedieron previo al 1 de julio del 2010, utilizamos las disposiciones procesales correspondientes a las Reglas de Procedimiento Civil de 1979.

 Posteriormente, el Artículo 5.013 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4213, fue enmendado por la Ley Núm. 135 de 25 de julio de 2000.